# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA
## Civil Action No.: 1:22-cv-00571

| | |
|---|---|
| Barry Moone, | ) |
| Plaintiff, | ) |
| vs. | ) |
| Source Receivables Management, LLC, | ) **COMPLAINT WITH** |
| | ) <u>**JURY TRIAL DEMAND**</u> |
| Defendant. | ) |

## PRELIMINARY STATEMENT

This action for damages is based upon the Defendant's overt and intentional, unlawful conduct in the furtherance of its efforts to collect a consumer debt. The Defendant's conduct is in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. and the North Carolina Collection Agency Act (NCCAA), N.C.Gen.Stat. 58-70-90 *et seq*.

## PARTIES

1. Plaintiff, Barry Moone, is a natural person who resides in Marshall County, Alabama.

2. Defendant, Source Receivables Management, LLC, is a limited liability company headquartered in North Carolina. It can be served with process via its registered agent, Mary Smith, 5703 Bare Back Ct, Raleigh, North Carolina.

1

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over Plaintiff's Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over Defendant because, inter alia, Defendant's principal office is located in Greensboro, North Carolina, and frequently and routinely conducts business in the State of North Carolina, including the conduct complained of herein.

5. Pursuant to 28 U.S.C. § 1391, venue is proper in the Middle District of North Carolina because the Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

6. Plaintiff is a 61-year-old man with deteriorating health. He is disabled, unable to engage in competitive employment, and is in the process of obtaining disability insurance benefits through the Social Security Administration.

7. Plaintiff is allegedly obligated to pay a consumer debt arising out of cellular phone service and is, therefore, a "consumer", as that term is defined by the FDCPA, 15 U.S.C. § 1692a(3) and the NCCAA, N.C.Gen.Stat. § 58-70-90(2).

8. Defendant is a collection agency specializing in the collection of consumer debt.

9. Defendant uses interstate commerce and/or mail in its business in the collection of consumer debts.

10. Defendant manages, and collects upon, thousands of consumer debt accounts annually.

11. Defendant is engaged in the collection of debts from consumers using the mail and telephone.

12. Defendant regularly attempts to collect consumer debts alleged to be due to another.

13. Defendant engages, directly or indirectly, in debt collection from consumers.

14. Defendant holds a collection agency permit issued by the North Carolina Department of Insurance.

15. Defendant was and is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

16. Defendant was and is a "collection agency" as defined by the NCCAA, N.C.Gen.Stat. §§ 58-70-15(a) and 58-70-90(1)

17. In 2019, the Plaintiff entered into a cellular service contract with Sprint, a mobile phone service provider. The terms of the agreement stated that Sprint would provide the Plaintiff with a functional mobile phone and the Plaintiff agreed to subscribe to Sprint services for a specified period of time.

18. Soon after receiving the phone, it ceased functioning properly. Per instructions he received from Sprint, the Plaintiff returned the phone and was to receive a replacement. The replacement never arrived.

19. The Defendant was retained by Sprint to pursue the balance allegedly owed by the Plaintiff on the service agreement. The amount sought is $411.00.

20. The Plaintiff became aware of Defendant's collection efforts when he reviewed his credit report as published by Equifax, a major credit reporting bureau, in April, 2021.

21. On April 20th, 2021, the Plaintiff initiated a telephone call to the Defendant to discuss the account being reported. At that time, he was connected with an individual identifying herself as "Kanita."

22. After verifying the Plaintiff's identity, the Defendant confirmed it was collecting $411.65 on behalf of Sprint.

23. The Plaintiff informed the Defendant that he made a payment when he received the phone but, shortly thereafter, the phone ceased working and that he sent the phone back.

24. The Defendant responded that he had an 18-month commitment.

25. The Plaintiff reiterated that he sent the phone back because it did not function properly and Sprint failed to replace it, thus clearly disputing the debt.

26. The Plaintiff and the Defendant continued to discuss the account for some time with the Plaintiff focusing on methods of payment he could perform which would result in the removal of this negative tradeline off of his credit report. The call ended shortly thereafter.

27. On July 29th, 2021, the Plaintiff again accessed his credit report as published by Equifax. At that time, he noted that on July 22nd, 2021, the Defendant re-reported the negative tradeline showing the amount owed and in collection but failed to report the critical fact that the debt was disputed. A reproduction of the tradeline as reported by Defendant and published by Equifax appears below:

| | | | |
|---|---|---|---|
| Date Reported: Jul 22, 2021 | | | |
| Collection Agency | SOURCE RECEIVABLES MANAGEMENT, | Balance Date | Jul 22, 2021 |
| Original Creditor Name | SPRINT | Account Designator Code | INDIVIDUAL_ACCOUNT |
| Date Assigned | Oct 06, 2020 | Account Number | xxxxxx 01 |
| Original Amount Owed | $411 | Creditor Classification | Cable or Cellular |
| Amount | $411 | Last Payment Date | |
| Status Date | Jul 22, 2021 | Date of First Delinquency | Aug 31, 2019 |
| Status | UNPAID | | |
| Comments | | Contact | |
| | | SOURCE RECEIVABLES MANAGEMENT, 4615 DUNDAS DR STE 102 GREENSBORO, NC 27407 1-336-286-3111 | |

28. It was incumbent upon Defendant to mark the account as disputed, both internally and in any reporting made to third parties.

29. The Defendant's communications with Equifax were in connection with, and indeed facilitated, its efforts to collect from the Plaintiff.

30. Credit reporting is recognized as a powerful tool used to extract payment from consumer debtors. *Quale v. Unifund CCR Partners*, 682 F.Supp.2d 1274 (S.D. Ala. 2010).

31. The report as referenced herein and, specifically, the misleading tradeline was, upon information and belief, published by Equifax to third parties for the remainder of 2021.

## INJURIES-IN-FACT AND DAMAGES

32. As a result of the Defendant's actions and/or omissions, Plaintiff has suffered actual damages, including but not limited to the following:

a.) Being subjected to false, deceptive, and unfair debt collection practices, including practices expressly prohibited by law;

b.) Defendant's false and misleading communications to leading credit reporting bureaus were akin to defamation of the Plaintiff resulting in subscribers to the credit reporting services receiving a false impression of Plaintiff's credit worthiness and debt-to-income ratio;

c.) Uncompensated time expended away from activities of daily living, to confer with counsel regarding the Defendant's collection efforts;

d.) Anxiety and stress caused by concern that Defendant would continue to reporting false and misleading credit information that would be disseminated to third parties. The anxiety and worry experienced by the Plaintiff was sufficient to negatively affect his demeanor, his ability to engage in daily activities, resulted in sleeplessness, and adversely affected his relationships with others.

33. Accordingly, through the violation of Plaintiff's statutorily created rights under the FDCPA, Plaintiff has suffered an injury-in-fact sufficient to establish Article III standing.

# CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692 et. seq.

*Violations of 15 U.SC. § 1692e and its subparts*

34. 15 U.S.C. § 1692e specifically prohibits the use of any false, deceptive, or misleading representations or means in connection with the collection of any debt.

35. "The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage. 15 U.S.C. § 1692(e). Section 1692e forbids the use of 'any false, deceptive, or misleading representation or means' in debt collection, and provides a non-exhaustive list of prohibited conduct." *United States v. National Financial Servs.*, 98 F.3d 131, 135 (4th Cir. 1996).

36. "Violations of Section 1692e are viewed from the perspective of the "least sophisticated consumer." *National Financial Servs.*, 98 F.3d at 135-36. "[E]valuating debt collection practices with an eye to the 'least sophisticated consumer' comports with basic consumer-protection principles." *Id.* at 136. The purpose of that standard "is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id.* at 136 *quoting Clomon v. Jackson*, 988 F.2d

1314, 1318 (2nd Cir. 1983). Indeed, its purpose is to protect "naive consumers" with a minimal understanding of personal finance and debt collection. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (per curiam).

37. Moreover, the least sophisticated consumer is not to be held to the same standard as a reasonably prudent consumer. The least sophisticated consumer, though not unreasonable, is "ignorant" and "unthinking," "gullible," and of "below-average sophistication or intelligence," *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 16-17107, 2019 U.S. App. LEXIS 33662, at 12-13 (11th Cir. Nov. 12, 2019), quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)

38. Section 1692e prohibits: (2)(A) the false representation of the character, amount, or legal status of any debt.

39. Section 1692e also prohibits: (8) "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." *O'Fay v. Sessoms & Rogers, P.A.*, 2010 WL 9478988, at *7 (E.D.N.C. Feb. 9, 2010).

40. Section 1692e also prohibits: (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain

9

Case 1:22-cv-00571-WO-JLW   Document 1   Filed 07/21/22   Page 9 of 14

information concerning a consumer." *United States v. National Financial Servs.*, 98 F.3d 131, 135 (4th Cir. 1996).

41. "The right to dispute a debt is the most fundamental of those set forth in § 1692g(a), and it was reasonable to ensure that it could be exercised by consumer debtors who may have some difficulty with making a timely written challenge." *Hooks v. Forman*, 717 F.3d 282, 286 (2d Cir. 2013).

42. Section 1692e(8) does not impose an affirmative duty to report that a debt is disputed, but "if a debt collector elects to communicate 'credit information' about a consumer, it must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt. *O'Fay v. Sessoms & Rogers, P.A.*, 2010 WL 9478988, at *7 (E.D.N.C. Feb. 9, 2010).

43. "Because reporting a debt to a credit reporting agency can be seen as a communication in connection with the collection of a debt, the reporting of such a debt in violation of the provisions of § 1692e(8) can subject a debt collector to liability under the FDCPA." *Sullivan v. Equifax, Inc.*, 2002 WL 799856, at *4 (E.D. Pa. Apr. 19, 2002).

44. "One commentator has remarked that 'this provision recognizes that reporting a debt to a credit reporting agency is 'a powerful tool designed, in part, to wrench compliance with payment terms ....' " Hobbs, § 5.5.10, p. 170–71 (citing

*Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R.1993) & *Matter of Sommersdorf*, 139 B.R. 700, 701 (Bankr.S.D.Ohio 1991)). *See Ditty v. CheckRite, Ltd., Inc.*, 973 F.Supp. 1320, 1331 (D.Utah 1997)." *Sullivan v. Equifax, Inc.*, 2002 WL 799856, at *4 (E.D. Pa. Apr. 19, 2002).

45. The Defendant's failure to report the debt in collection as disputed is a violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(8) and 1692e(10).

***Violations of 15 U.SC. § 1692f and its subparts***

46. The conduct of the Defendant as described herein was unfair and unconscionable. It preyed upon perceived lack of sophistication of the Plaintiff.

47. Defendant's conduct violated 15 U.S.C. § 1692f.

## COUNT II

### VIOLATIONS OF THE NC COLLECTION AGENCY ACT
### N.C.Gen.Stat. § 58-70-90 *et. seq.*

48. The NCCAA shares similar purposes and provisions with the FDCPA, including the prohibition of false, deceptive, and misleading representations, *cf* N.C.Gen.Stat. § 58-70-110 and 15 U.S.C. § 1692e, and unfair practices. *Cf.* N.C.Gen.Stat. § 58-70-115 and 15 U.S.C. § 1692f. As such, the FDCPA standards established by the Fourth Circuit may be used as a model for analyzing collection agency communications under the NCCAA. *See DIRECTV, Inc. v. Cephas*, 294 F. Supp. 2d 760, 763 (M.D.N.C. 2003). *See supra*, ¶¶ 29-31.

49. North Carolina "hold[s] debt collection agencies regulated under Chapter 58 to a higher standard ... than the standard to which other entities engaged in debt collection are held under" other state statutes. *Simmons v. Kross Lieberman & Stone, Inc.*, 746 S.E.2d 311, 316 (N.C.Ct.App. 2013).

50. Plaintiff brings this action against Defendant under Section 58-70-130(b) of the NCCAA, "which authorizes debtors to recover a statutory penalty of between $500 to $4,000 for each violation of the Act by a debt collector." *Townes v. Portfolio Recovery Associates, LLC*, 275 N.C.App. 939, 943, (N.C.Ct.App. 2020).

51. "Damages under the FDCPA do not preclude damages under relevant state law." *In re Baie*, 2011 WL 1257148, at *4 (Bankr. E.D.N.C. Mar. 30, 2011)

***Violations of N.C.Gen.Stat. § 58-70-110***

52. Section 110 of the North Carolina Collection Agency Act prohibits a collection agency from attempting to collect a debt by using any fraudulent, deceptive or misleading representation.

53. By communicating false credit information to a credit reporting agency, and by failing to communicate that the debt was disputed, Defendant attempted to collect the debt through deceptive and misleading representations.

***Violations of N.C.Gen.Stat. § 58-70-115***

54. Section 115 of the North Carolina Collection Agency Act prohibits a collection agency from attempting to collect a debt by using any unfair practices.

55. Here, despite being expressly required by the FDCPA to communicate the disputed nature of the debt to any third-party, Defendant chose not to do so and attempted to collect the debt through deceptive and misleading representations. Utilizing illegal conduct to collect a debt is an unfair practice.

## TRIAL BY JURY

56. Plaintiff is entitled to and hereby requests a trial by jury.

//

//

//

//

//

//

//

//

//

//

//

WHEREFORE, Plaintiff Barry Moone prays that judgment be entered against Defendant Source Receivables Management, LLC for:

a.) Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1) and N.C.Gen.Stat. § 58-70-130(a);

b.) Statutory damages, pursuant to 15 U.S.C. § 1692k;

c.) Civil penalties, pursuant to N.C.Gen.Stat. § 58-70-130(b);

d.) Reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) and N.C.Gen.Stat. § 75-16.1; and

e.) Such other and further relief as may be just and proper.

Respectfully submitted this 21st day of July, 2022.

/s/ Craig Shapiro
Craig Shapiro (State Bar # 48887)
Law Offices of John T. Orcutt, P.C.
1738 Hillandale Rd, Suite D
Durham, North Carolina 27705
(919) 286-1695
cshapiro@johnorcutt.com

ATTORNEY FOR PLAINTIFF